MAY TERM
1840.

Perpetual In-
surance Co.
vs.
Steam Boat
Detroit.

PERPETUAL INSURANCE Co. vs. STEAMBOAT DETROIT:
A complaint filed against a Steam Boat, under the act concerning
"boats and vessels," for mal-performance of a contract of affreight-
ment for the delivery of goods, should set·forth the proper parties;
state, with whom the contract was made; the terms·of the contract;
when it was entered into; the quantity of goods delivered; and
should also show, that the suit was commenced within six months
after the cause of action commenced; otherwise, the complaint does
not "set forth the plaintiff's demand *in all its particulars*," as re-
quired by the 4th section of the above act.

*King and Tunstall for plaintiffs in error.*

The circuit court, in this case, committed error in this, to
wit: First, that the plaintiff's complaint is in pursuance of
the statute authorizing such proceedings against boats and
vessels. Missouri digest, page 102, &c.

2d. That upon the first discovery of the loss of the goods,
the owner thereof insured had a right to abandon to the in-
surer, the plaintiffs in error, and did so abandon. See
Hughes on Insurance, pages at top 324 and 325. Also 2d
vol. Peters' Digest, page 513, at bottom.

3d. That the owners of the goods could not abandon until
the vessel arrived in port, for, until then, they could not tell
what goods were missing, or whether they had a right to
abandon, and if they did abandon they must do so for the
whole subject of insurance, and not for a part, otherwise it
would be no abandonment. Hughes on Insurance; page at
top 325.

4. And that when an abandonment is made, the under-
writers, the insurers, stand, from that time, in the same situ-
ation as the owners did as relates to the shipper; and that if
the owners would have a right to sue for a loss against the
shipper, the whole right to sue, and in the thing insured, is,
by the abandonment, immediately transferred to the under-
writers, the insurers, and they stand completely in the place
of the owners of the goods, and have a complete right to the
thing, whatever is remaining insured, and to have and main--
tain all actions necessary to recover a loss by the neglect of
the shipper. See Hughes on Insurance page at top 328,
329, &c. Also, see 2d vol. of Peter's Digest, page 515, &c.,
he cites the cases upon the "effect of abandonment."

5th. The right to abandon being conclusive in the owners

of the goods insured, and they having in pursuance of this right abandoned to the underwriters, the plaintiffs in error, unless they, the plaintiffs, can sue and maintain this complaint, no other person can, for, by the law of insurance, all the right the insured had to sue, previous to the abandonment, is, by it, immediately transferred to the insurers, the plaintiffs in error; and if they cannot maintain this suit, it is clear the insured cannot, and so no one can;—here then would be a right but no remedy, and the shippers would be entirely released from any responsibility upon their undertaking to safely transport and ship the goods to the port of destination. It is, therefore, manifest that the circuit court erred in sustaining said demurrer, and giving judgment thereon for the defendant in error.

*Geyer for Defendants.*

The law requires that the plaintiff should set forth his demand in all *its particulars.* This complaint is said to be for mal-performance of a contract of affreightment, and no contract whatever is set out, as having been made by any one on behalf of the Steam Boat Detroit.

The complaint sets forth an account for divers goods belonging, not to the plaintiff, but to others, as having been lost, but how, when, where, by whom, or under what contract, is not stated.

It is stated, that goods shipped on board the Lilly at Pittsburg. to be transported to St. Louis, were re-shipped on board the Detroit under no contract, and that goods lost—whether by the Lilly or the Detroit, does not appear—were abandoned by the owners to the plaintiffs at St. Louis; but it does not follow, that the owners of the Detroit are liable for them.

It does not appear who shipped the goods, or on what contract; and, for any thing that appears, they were not lost by either boat, for they appear to have been abandoned to the Insurance Company at St. Louis.

If any goods were lost, it may have been by the peril of the river, or some other excepted peril.

If the loss happened before the abandonment, even upon the supposition that the carrier was liable, the action accrued

MAY TERM
1840.

Perpetual Insurance Co.
vs.
Steam boat Detroit.

MAY TERM
1840.

Perpetual In-
surance co.
vs
Steam boat
Detroit.

to the owners, and such right of action is not transferred to the office, by abandonment.

Underwriters can have no action in their own names against a carrier, for losses happening before their right of property accrues by the abandonment.

The complaint does not show that the contract was made, or that the loss happened within this State; nor, does it appear, that the action accrued to any one within six months next before the commencement of this suit.

Error to the Circuit Court of St. Louis County.

*Opinion of the Court delivered by Tompkins Judge.*

The St. Louis perpetual Insurance Company brought its action against the Steam boat Detroit, in the circuit court of St. Louis county. Judgment being there given against the company, they prosecute their writ of error to reverse that judgment.

The plaintiff filed his complaint against the Steam boat, under the provisions of the fourth section of the act to provide for the collection of demands against boats and vessels, found in the digest of 1835, at page 102. It is as follows: " The St. Louis Perpetual Insurance Company complains of ' the steam boat Detroit, in this, to wit: For mal performance ' of a contract of affreightment, to wit, dry goods from the ' port of the city of Louisville, commonwealth of Kentucky, ' to the port of St. Louis, State of Missouri, entered into by ' Thompson and F. A. Nants, clerks of said Steam boat De- ' troit, and is, in all particulars, as follows, to wit: for amount ' of dry goods lost from one box owned by F. S. Rutherford ' $174, &c.," enumerating the charges for damages sustained, and some credits to the boat; and it then proceeds, "As, al- ' so, per bills of lading, to wit, three in number, two of which ' signed by William Gore, and one by Samuel Deane, mas- ' ter of Steam boat Lilly, at the port of Pittsburg, for said ' goods, with the privilege of re-shipping;" wherein, said steam boat Lilly obligated herself to transport said goods from the port of Pittsburg, to the port of St. Louis, Missouri; and which said goods were re-shipped, at the said port of Louisville, to be transported to the said port of St, Louis, Missouri, on said steam boat Detroit, by said steam boat Lil-

ly, as per privilege in said bills of lading, here to the court shown; and which said goods, lost as aforesaid, have been abandoned by the owners thereof, in the port of St. Louis, to the said St. Louis Perpetual Insurance Company; it having insured the safe transportation of the said goods to the said port of St. Louis, from the said port of Pittsburg, &c.

MAY TERM<br>
1840.<br>
Perpetual In-<br>
surance Co.<br>
vs.<br>
Steam boat<br>
Detroit.

To this complaint a demurrer was filed.

In the fourth section of this act, it is provided that the complaint shall set forth the plaintiff's demand in all its particulars, and on whose account the same accrued; and that it shall be verified by the oath of the plaintiff, or of some credible person or persons for him, and shall stand in lieu of a declaration.

No objection is taken to the sufficiency of the affidavit. The act in requiring a complaint to be filed, and in declaring that such complaint shall stand in lieu of a declaration, clearly indicates a disposition, that it shall not be required to frame a complaint with the same regard to technical forms as is observed in a declaration at common law. A contract ought to be set out with proper parties. No person is named in this complaint as contracting with the boat, by its agents. Most clearly the boat made no contract with the Insurance Company. We are not told on what terms the goods were to be transported; as has been observed, by the counsel of the boat, these goods might have been lost by the perils of the water, &c., which are usually excepted. The terms of the contract, as to the re-shipment, are not set out; whether the Lilly, on board of which the goods were shipped at Pittsburg, might not be liable to the owner of the goods, and the Detroit answerable over to the Lilly, does not appear. The twenty-first section of the act, under which this action is brought, requires. that all actions against a boat or vessel, under the provisions of this act, shall be commenced and sued within six months after the cause of such action shall have accrued. Although, the complainant ought not to be confined to proving that the cause of action accrued on the particular day that may be named in the complaint, yet some time ought to be laid in the complaint, at least, as a date of the contract, to direct the attention of the defendant, so as

MAY TERM
1840

Perpetual Insurance co.
vs.
Steam boat
Detroit.

A complaint filed against a steam boat, under the act concerning "boats and vessels," for mal-performance of a contract of affreightment for the delivery of goods, should set forth the proper parties, state with whom the contract was made—the terms of the contract—when it was entered into; the quantity of goods delivered; and should also show that the suit was commenced within six months after the cause of action accrued: otherwise, the complaint does not "set forth the plaintiff's demand *in all its particulars*," as required by the 4th section of the above act.

to enable him to ascertain whether he is annoyed by a stale demand. It would have satisfied the law if the party had related, with a moderate degree of certainty, who were the parties to this contract; when it was entered into; the terms, &c. The complaint appears to be entirely deficient in the requisites of a correct statement of the cause of action. It should properly have begun with a statement of the contract with the Lilly, at Pittsburg; the quantity of goods delivered, and so many bales, boxes, &c.; the time and terms of delivery; that part of the contract which authorized the Lilly to transfer the freight to the Detroit, &c. Then the breach might have been assigned. As the complaint is framed, it does not so clearly appear what right the company has to be plaintiff in this action, or to sue in its own name, on a contract which must have been made with others. Regard to the rights of the defendants, ought to have induced the plaintiffs to state where as well as when this loss took place, if it could have been done; as for instance, on board of which boat, if the character of the loss were such as to enable the plaintiff to state it.

The judgment of the circuit court was not then, in my opinion, erroneous, in sustaining the demurrer to the plaintiff's complaint. The other members of this court concurring in this opinion, the judgment of that court is affirmed.